Jennifer Pafiti (SBN 282790)
**POMERANTZ LLP**
468 North Camden Drive
Beverly Hills, CA 90210
Telephone:    (818) 532-6449
E-mail:        jpafiti@pomlaw.com

Jeremy A. Lieberman
J. Alexander Hood II
Marc Gorrie
**POMERANTZ LLP**
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:    (212) 661-1100
Facsimile:    (212) 661-8665
Email:  jalieberman@pomlaw.com
          ahood@pomlaw.com
          mgorrie@pomlaw.com
(*additional counsel on signature page*)

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GROVER M. KLARFELD, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>ORACLE CORPORATION, LAWRENCE J. ELLISON, MARK VINCENT HURD, and SAFRA ADA CATZ,<br><br>Defendants | Case No.<br><br>CLASS ACTION<br><br>**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>DEMAND FOR JURY TRIAL |

## INTRODUCTION

1.      Plaintiff, individually and on behalf of all the other persons similarly situated, by Plaintiff's undersigned attorneys, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of Securities and Exchange Commission ("SEC") filings by Oracle Corporation ("Oracle" or the "Company"), as well as conference call transcripts and media and analyst reports about the Company. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## SUMMARY OF THE ACTION

2.      This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired the common stock of Oracle between September 16, 2015 and June 1, 2016 (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

## BACKGROUND

3.      Oracle develops, manufactures, markets, sells, hosts, and supports database and middleware software, application software, cloud infrastructure, hardware systems, and related services worldwide.  Oracle is among the world's largest software makers by revenue.  Through its Oracle Cloud offerings, the Company purports to be a leader in the core technologies of cloud information technology environments, including database and middleware software as well as enterprise applications, virtualization, clustering, large-scale systems management and related infrastructure.  The

Company's Oracle Cloud offerings include Software-as-a-Service ("SaaS"), Platform-as-a-Service ("PaaS"), and Infrastructure-as-a-Service ("IaaS") offerings.

4.   Oracle was founded in 1977 and is headquartered in Redwood City, California.  The Company's stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol "ORCL."

5.   Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Oracle used improper accounting practices to inflate the Company's cloud computing revenues by millions of dollars; (ii) in violation of the Sarbanes-Oxley Act of 2002 ("the "Sarbanes-Oxley Act") and the Dodd-Frank Wall Street Reform and Consumer Protection Act (the "Dodd-Frank Act"), Oracle had terminated a Senior Finance Manager for raising the Company's improper accounting practices to the attention of her supervisors; and (iii) as a result of the foregoing, Oracle's public statements were materially false and misleading at all relevant times.

6.   On June 1, 2016, after the market closed, media outlets reported that a former Senior Finance Manager at Oracle, Svetlana Blackburn ("Blackburn"), had sued the Company for terminating her for complaining about improper accounting practices in Oracle's cloud services business.  In a complaint filed in U.S. District Court for the Northern District of California, Blackburn accused Oracle's upper management of trying to push her to "fit square data into round holes" to make Oracle Cloud Services' results look better.  Blackburn's lawsuit accused Oracle of violating the anti-retaliation provisions of the Sarbanes-Oxley Act and the Dodd-Frank Act and alleged that Blackburn was terminated on October 15, 2015, just one month after the alleged wrongdoing began, and two months after she received a positive performance review.

7.   On this news, Oracle stock fell $1.60, or 3.97%, to close at $38.66 on June 2, 2016.

3

8.    As a result of Defendants' false and/or misleading statements, Oracle securities traded at inflated prices during the Class Period.  However, after disclosure of Defendants' false and/or misleading statements, Oracle's stock suffered a precipitous decline in market value, thereby causing significant losses and damages to Plaintiff and other Class members.

## JURISDICTION AND VENUE

9.    The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

10.    Jurisdiction is conferred by 28 U.S.C. §1331 and §27 of the 1934 Act. The claims asserted herein arise under §§10(b) and 20(a) of the 1934 Act [15 U.S.C. §§78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder [17 C.F.R. §240.10b-5].

11.    Venue is proper in this district pursuant to 28 U.S.C. §1391(b), because Oracle is headquartered in this district and many of the acts and practices complained of herein occurred in substantial part in this district.

12.    In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

13.    Plaintiff purchased or otherwise acquired Oracle common stock as described in the attached certification and was damaged by the conduct alleged herein.

14.    Defendant Oracle is incorporated in Delaware, and the Company's stock trades on the NYSE under the ticker symbol "ORCL."  The Company's corporate headquarters are located at 500 Oracle Parkway, Redwood City, California 94065.

15.     Defendant Lawrence J. Ellison ("Ellison") has served at all relevant times as Executive Chairman and Chief Technology Officer of Oracle.

16.     Defendant Mark V. Hurd ("Hurd") has served at all relevant times as Co-Chief Executive Officer ("Co-CEO") and a Director of Oracle.   Oracle's SEC filings designate Hurd as Principal Executive Officer of the Company.

17.     Defendant Safra A. Catz ("Catz") has served at all relevant times as Co-CEO and a Director of Oracle.   Oracle's SEC filings designate Catz as Principal Executive and Financial Officer of the Company.

18.     The Defendants named in ¶¶ 15-17 are sometimes collectively referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

19.     Oracle develops, manufactures, markets, sells, hosts, and supports database and middleware software, application software, cloud infrastructure, hardware systems, and related services worldwide.   Oracle is among the world's largest software makers by revenue.   Through its Oracle Cloud offerings, the Company purports to be a leader in the core technologies of cloud information technology environments, including database and middleware software as well as enterprise applications, virtualization, clustering, large-scale systems management and related infrastructure.   The Company's Oracle Cloud offerings include SaaS, PaaS, and IaaS offerings.

20.     Oracle was founded in 1977 and is headquartered in Redwood City, California.

### False and Misleading Statements were Issued During the Class Period

21.     The Class Period begins on September 16, 2015, when Oracle issued a press release and filed a Current Report on Form 8-K with the SEC announcing the Company's financial results for the

quarter ended August 31, 2015 (the "FY 2016 Q1 Release").  With respect to Oracle's cloud computing business, the Company stated, in part:

> CLOUD SAAS AND PAAS REVENUES UP 34% IN U.S. DOLLARS AND UP 38% IN CONSTANT CURRENCY
>
> *Cloud plus On-Premise Software Revenues Down 2% in U.S. Dollars and Up 6% in Constant Currency*
>
> . . .
>
> Cloud plus On-Premise Software Revenues were $6.5 billion, down 2% in U.S. dollars and up 6% in constant currency. Total Cloud Revenues were $611 million, up 29% in U.S. dollars and up 34% in constant currency. Cloud software as a service (SaaS) and platform as a service (PaaS) revenues were $451 million, up 34% in U.S. dollars and up 38% in constant currency. Cloud infrastructure as a service (IaaS) revenues were $160 million, up 16% in U.S. dollars and up 23% in constant currency. . . .
>
> "Our traditional on-premise software business plus our new cloud business grew at a combined rate of 6% in constant currency," said Oracle CEO, Safra Catz. "***This growth is being driven by new SaaS and PaaS annual recurring cloud subscription contracts which almost tripled in the quarter.*** As our cloud business scales-up, *we plan to double our SaaS and PaaS cloud margins over the next two year*s – starting from 40% this just completed Q1, to approximately 60% this coming Q4, and then on up to 80% two years from now. ***Rapidly growing cloud revenue combined with a doubling of cloud margins will have a huge impact on EPS growth going forward."***
>
> "In Q1 ***SaaS and PaaS revenue was up 38% in constant currency*** – in Q4 that revenue growth rate will be over 60%," said Oracle CEO, Mark Hurd. "That cloud revenue growth rate is being driven by a year-over-year bookings growth rate of over 150% in Q1. ***Our increasing revenue growth rate is in sharp contrast to our primary cloud competitor's revenue growth rates which are on their way down."***
>
> "***We are still on target to book between $1.5 and $2.0 billion of new SaaS and PaaS business this fiscal year***," said Oracle Executive Chairman and CTO Larry Ellison. "That means Oracle would sell between 50% more and double the amount of new cloud business than salesforce.com plans to sell in their current fiscal year. ***Oracle is the world's second largest SaaS and PaaS company, but we are rapidly closing in on number one."***

(Emphases added.)

22.      On September 18, 2015, Oracle filed a Quarterly Report on Form 10-Q with the SEC, announcing the Company's complete financial and operating results for the quarter ended August 31, 2015 (the "FY 2016 Q1 10-Q").  For the quarter, Oracle reported net income of $1.75 billion, or $0.40

per diluted share, on revenue of $8.45 billion, compared to net income of $2.18 billion, or $0.48 per diluted share, on revenue of $8.60 billion for the same period in the prior year.  Oracle also reported total cloud revenues of $611 million, compared to $475 million for the same period in the prior year.

23.     The FY 2016 Q1 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act by Defendants Hurd and Catz, stating that the financial information contained in the FY 2016 Q1 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

24.     On December 16, 2015, Oracle issued a press release and filed a Current Report on Form 8-K with the SEC announcing the Company's financial results for the quarter ended November 30, 2015 (the "FY 2016 Q2 Release").  With respect to Oracle's cloud computing business, the Company stated, in part:

*CLOUD SAAS AND PAAS REVENUES UP 34% IN U.S. DOLLARS AND UP 39% IN CONSTANT CURRENCY*

. . .

Cloud plus On-Premise Software Revenues were $7.0 billion, down 4% in U.S. dollars and up 2% in constant currency. Total Cloud Revenues were $649 million, up 26% in U.S. dollars and up 31% in constant currency. Cloud software as a service (SaaS) and platform as a service (PaaS) revenues were $484 million, up 34% in U.S. dollars and up 39% in constant currency. Cloud infrastructure as a service (IaaS) revenues were $165 million, up 7% in U.S. dollars and up 11% in constant currency. Total On-Premise Software Revenues were $6.4 billion, down 7% in U.S. dollars and unchanged in constant currency.

. . .

   "We're very pleased with our non-GAAP EPS of $0.63, beating the mid-point of guidance by 4 cents despite a stronger than expected currency headwind," said Oracle CEO, Safra Catz. "***We grew our SaaS and PaaS revenue 38% in constant dollars this past quarter, and we expect that revenue growth rate to accelerate to nearly 50% in Q3 and close to 60% in Q4. This rapid increase in our cloud revenue will help drive our SaaS and PaaS cloud gross margins from 43% in Q2 to approaching 60% in Q4 and drive significant EPS growth in Q4.***"

*"**It was a very strong growth quarter for our cloud business, with SaaS and PaaS bookings up 75% in constant currency and billings up 68% in U.S. dollars,**"* said Oracle CEO, Mark Hurd. "We did 100 Fusion HCM deals and over 300 Fusion ERP deals in the quarter. We now have more than 1,500 ERP customers in the cloud – that's at least ten times more ERP customers than Workday."

*"**We are still on-target to sell and book more than $1.5 billion of new SaaS and PaaS business this fiscal year**",* said Oracle Executive Chairman and CTO Larry Ellison. "That is ***considerably more SaaS and PaaS new business than any other cloud services provider*** including salesforce.com."

(Emphases added.)

25.    On December 18, 2015, Oracle filed a Quarterly Report on Form 10-Q with the SEC, announcing the Company's complete financial and operating results for the quarter ended November 30, 2015 (the "FY 2016 Q2 10-Q").  For the quarter, Oracle reported net income of $2.20 billion, or $0.51 per diluted share, on revenue of $8.99 billion, compared to net income of $2.50 billion, or $0.56 per diluted share, on revenue of $9.60 billion for the same period in the prior year.  Oracle also reported total cloud revenues of $649 million, compared to $516 million for the same period in the prior year.

26.    The FY 2016 Q2 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act by Defendants Hurd and Catz, stating that the financial information contained in the FY 2016 Q2 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

27.    On March 15, 2016, Oracle issued a press release and filed a Current Report on Form 8-K with the SEC announcing the Company's financial results for the quarter ended February 29, 2016 (the "FY 2016 Q3 Release").  With respect to Oracle's cloud computing business, the Company stated, in part:

*CLOUD SAAS AND PAAS REVENUES UP 57% IN U.S. DOLLARS AND UP 61% IN CONSTANT CURRENCY*

. . .

8

Cloud plus On-Premise Software Revenues were $7.1 billion, down 1% in U.S. dollars and up 3% in constant currency. Cloud software as a service (SaaS) and platform as a service (PaaS) revenues were $583 million, up 57% in U.S. dollars and up 61% in constant currency. Cloud infrastructure as a service (IaaS) revenues were $152 million, down 2% in U.S. dollars and up 2% in constant currency. Total Cloud Revenues were $735 million, up 40% in U.S. dollars and up 44% in constant currency. . . .

"Our Cloud SaaS and PaaS revenue growth rate accelerated to 61% in constant currency in Q3," said Oracle CEO, Safra Catz. "This dramatic revenue increase drove our non-GAAP SaaS and PaaS gross margins up to 51% in Q3 as compared with 43% in Q2. ***Our cloud business is now in a hyper-growth phase. Our gross margins are climbing toward our target of 80%. These two factors will ignite substantial EPS and cash flow growth over Oracle's next few quarters.***"

"Our SaaS and PaaS gross deferred revenue grew 96% in Q3 – twice as fast as Workday and three times faster than Salesforce.com reported in their most recent quarters," said Oracle CEO, Mark Hurd. "Q3 SaaS and PaaS bookings were up 77% in constant currency. We added 942 new SaaS customers in the quarter, including several customers that switched from Workday HCM to Oracle Fusion HCM. We had more than 250 customers go live on Fusion SaaS HCM and Fusion ERP in Q3 alone. We now have over 11,000 SaaS customers with nearly 2,000 Fusion ERP customers – ten times more ERP customers than Workday claims to have."

"***In absolute dollar terms, Oracle is already selling more enterprise SaaS and PaaS new cloud revenue than any other company in the world*** – including Salesforce.com," said Larry Ellison, Oracle Chairman and CTO. "We are growing much faster than Salesforce.com. We also have many more SaaS products than Salesforce.com. In some of our most important SaaS markets, such as ERP, HCM, Supply Chain and Manufacturing, Salesforce.com does not participate at all. By successfully competing in all of these markets, ***Oracle has the ability to sustain its high growth over a long period of time.*** That should make it easy for us to pass Salesforce.com and become ***the largest SaaS and PaaS cloud company in the world.***"

(Emphases added.)

28.     On March 18, 2015, Oracle filed a Quarterly Report on Form 10-Q with the SEC, announcing the Company's complete financial and operating results for the quarter ended February 29, 2016 (the "FY 2016 Q3 10-Q").  For the quarter, Oracle reported net income of $2.14 billion, or $0.50 per diluted share, on revenue of $9.01 billion, compared to net income of $2.50 billion, or $0.56 per diluted share, on revenue of $9.33 billion for the same period in the prior year.  Oracle also reported total cloud revenues of $735 million, compared to $527 million for the same period in the prior year.

29.     The FY 2016 Q3 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act by Defendants Hurd and Catz, stating that the financial information contained in the FY 2016 Q3 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

30.     The statements referenced in ¶¶ 21-29 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Oracle used improper accounting practices to inflate the Company's cloud computing revenues by millions of dollars; (ii) in violation of the Sarbanes-Oxley Act and the Dodd-Frank Act, Oracle had terminated a Senior Finance Manager for raising the Company's improper accounting practices to the attention of her supervisors; and (iii) as a result of the foregoing, Oracle's public statements were materially false and misleading at all relevant times.

## **The Truth Emerges**

31.     On June 1, 2016, after the market closed, media outlets reported that Blackburn, a former Senior Finance Manager at Oracle, had sued the Company for terminating her for complaining about improper accounting practices in Oracle's cloud services business.  In a complaint filed in U.S. District Court for the Northern District of California, Blackburn accused Oracle's upper management of trying to push her to "fit square data into round holes" to make Oracle Cloud Services' results look better.  Blackburn's complaint alleged, in part, that beginning in or around September 2015:

> [Blackburn's] superiors instructed her to ***add millions of dollars in accruals to financial reports, with no concrete or foreseeable billing to support the numbers***, an act that [Blackburn] warned was ***improper and suspect accounting***.  She told her supervisor, "I will blow the whistle" if ordered to proceed further in this fashion.
>
> . . . ***The data, she knew, would end up in SEC filings and be touted on earnings calls, used to paint a rosier picture than actually existed on the ground.***  Dollar amounts that

10

might seem modest on their face would propagate through other data, ***influencing a host of statements on reports made to the investing public***.  Executives above her in the chain of command went ahead and added accruals on their own; once again, [Blackburn] objected.  She expressed serious misgivings about their plans for re-accruals as well.  A supervisor instructed her to ignore the absent billings that she had pointed out, because his intention was to re-accrue.  After confronting him about the dangers of a lack of billings, and the history of bad accruals that never resulted in billings, the supervisor told her that her statements were "irritating."  In addition to supervisors, a fellow finance manager and the company's assistant controller were on notice of [Blackburn's] concerns.  As [Blackburn] continued to resist and warn of the accounting improprieties, she became more of a roadblock than a team player who would ***blindly generate financial reports using improper bases to justify the bottom lines*** that her superiors demanded to see.

(Emphases added.)

32.     Blackburn's lawsuit accused Oracle of violating the anti-retaliation provisions of the Sarbanes-Oxley Act and the Dodd-Frank Act and alleged that Blackburn was terminated on October 15, 2015, just one month after the alleged wrongdoing began, and two months after she received a positive performance review.

33.     On this news, Oracle stock fell $1.60, or 3.97%, to close at $38.66 on June 2, 2016.

34.     As a result of Defendants' false and/or misleading statements, Oracle securities traded at inflated prices.  However, after disclosure of Defendants' false and/or misleading statements, Oracle's stock suffered a precipitous decline in market value, thereby causing significant losses and damages to Plaintiff and other Class members.

## CLASS ACTION ALLEGATIONS

35.     Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Oracle securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal

representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

36.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Oracle securities were actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiffs at this time and can be ascertained only through appropriate discovery, Plaintiffs believe that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Oracle or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

37.    Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

38.    Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation.  Plaintiff have no interests antagonistic to or in conflict with those of the Class.

39.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Oracle;

- whether the Individual Defendants caused Oracle to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Oracle securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

40. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

41. Plaintiffs will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Oracle securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiffs and members of the Class purchased, acquired and/or sold Oracle securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

42. Based upon the foregoing, Plaintiffs and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

43. Alternatively, Plaintiffs and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United*

13

*States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

**COUNT I**
**(Against All Defendants For Violations of**
**Section 10(b) and Rule 10b-5 Promulgated Thereunder)**

44.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

45.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

46.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Oracle securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Oracle securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

47.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the

14

market for Oracle securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Oracle's finances and business prospects.

48.   By virtue of their positions at Oracle, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

49.   Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of Oracle, the Individual Defendants had knowledge of the details of Oracle's internal affairs.

50.   The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Oracle.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Oracle's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Oracle securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Oracle's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Oracle securities at artificially inflated prices and relied

upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

51.     During the Class Period, Oracle securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Oracle securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Oracle securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Oracle securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

52.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

53.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

**COUNT II**
**(Violations of Section 20(a) of the Exchange Act**
**Against the Individual Defendants)**

54.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

16

55.     During the Class Period, the Individual Defendants participated in the operation and management of Oracle, and conducted and participated, directly and indirectly, in the conduct of Oracle's business affairs.  Because of their senior positions, they knew the adverse non-public information about Oracle's misstatement of income and expenses and false financial statements.

56.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Oracle's financial condition and results of operations, and to correct promptly any public statements issued by Oracle which had become materially false or misleading.

57.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Oracle disseminated in the marketplace during the Class Period concerning Oracle's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Oracle to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Oracle within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Oracle securities.

58.     Each of the Individual Defendants, therefore, acted as a controlling person of Oracle.  By reason of their senior management positions and/or being directors of Oracle, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Oracle to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Oracle and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

17

59.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Oracle.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment as follows:

A.     Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a Class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

B.     Awarding Plaintiff and the members of the Class damages and interest;

C.     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.     Such other and further relief as the Court may deem just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury.

DATED: June 2, 2016

Respectfully submitted,


*/s/Jennifer Pafiti*_____
Jennifer Pafiti (SBN 282790)
**POMERANTZ LLP**
468 North Camden Drive
Beverly Hills, CA 90210
Telephone:    (818) 532-6449
E-mail:        jpafiti@pomlaw.com

Jeremy A. Lieberman
J. Alexander Hood II
Marc Gorrie
**POMERANTZ LLP**
600 Third Avenue, 20th Floor
New York, New York 10016

18

Telephone:     (212) 661-1100
Facsimile:      (212) 661-8665
Email:  jalieberman@pomlaw.com
ahood@pomlaw.com
mgorrie@pomlaw.com

Patrick V. Dahlstrom
**POMERANTZ LLP**
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:     (312) 377-1181
Facsimile:      (312) 377-1184
Email:  pdahlstrom@pomlaw.com

*Attorneys for Plaintiff*

### CERTIFICATION PURSUANT
### TO FEDERAL SECURITIES LAWS

1.   I, _____Grover Klarfeld_____ make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.   I have reviewed a Complaint against Oracle Corporation ("Oracle" or the "Company"), and authorize the filing of a comparable complaint on my behalf.

3.   I did not purchase or acquire Oracle securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.   I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired Oracle securities during the class period, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.   To the best of my current knowledge, the attached sheet lists all of my transactions in Oracle securities during the Class Period as specified in the Complaint.

6.   During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7.   I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.  I declare under penalty of perjury that the foregoing is true and correct.

Executed _____6/2/2016_____
                (Date)

_____
                (Signature)

_____Grover Klarfeld, MD_____
                (Type or Print Name)

**ORACLE CORPORATION (ORCL)**                                    **Klarfeld, Grover M.**

### LIST OF PURCHASES AND SALES

| DATE | PURCHASE OR SALE | NUMBER OF SHS/UTS | PRICE PER SH/UT |
|------|------------------|-------------------|-----------------|
| 4/21/2016 | Purchase | 100 | $41.1039 |
| 5/31/2016 | Purchase | 100 | $40.0870 |